THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN PARSONS, Defendant-Appellant.

First District (5th Division)   No. 1—94—4175

Opinion filed November 1, 1996.—Rehearing denied December 10, 1996.

1050

Arthur E. Engelland, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Melissa Durkin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

The defendant, John Parsons, was charged by indictment with aggravated arson for allegedly setting off an explosive device in the

bathroom of a Chicago bar in violation of section 20—1.1(a) of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 20—1.1(a) (now 720 ILCS 5/20—1.1(a) (West 1994))). After a jury trial, the defendant was found guilty of aggravated arson and was sentenced to a term of 15 years' imprisonment. The defendant filed motions to reduce his sentence and for a new trial, which the trial court denied. The defendant appeals his conviction based on the purported insufficiency of his indictment and on the trial court's failure to instruct the jury as to the lesser offense of criminal damage to property (see Ill. Rev. Stat. 1991, ch. 38, par. 21—1 (now 720 ILCS 5/21—1 (West 1994))). The defendant also appeals the denial of his motions for a new trial and for a reduction of his sentence.

Because the defendant does not challenge the sufficiency of the evidence on appeal, the evidence adduced at trial is summarized as follows. On October 25, 1992, the night of the explosion at issue in this case, Margaret Summit owned a bar called the His and Hers Lounge located at 5820 North Broadway in Chicago. Summit testified that, on that date, she was in her bar attending a birthday party for one of her bartenders, named Joe Franco, and that Joe Franco and Timothy Janes, the bar's security guard, were also with her in the bar. At approximately 1:30 a.m., with six or seven people left at the party, the defendant, John Parsons, and his friend, Robert Cunningham, entered the bar. Summit knew Parsons because he had had an affair with her foster daughter, Susan Hanson, over the course of many years, and had spoken with and met with him on various occasions in the preceding years. Summit testified that the affair had ended shortly before the October 25 explosion, and that since it had ended, Parsons had been calling Summit repeatedly in order to locate Hanson. Summit testified that on one evening in September 1992, Parsons called her 30 times; that he called an average of five times per day every other day; and that defendant angrily threatened and cursed at Summit on more than one occasion when she denied knowing where Hanson was. Summit testified that she did not know the whereabouts of her foster daughter, Hanson, at the time of the trial.

Summit also testified that upon Parson's arrival at her bar on October 25, she was seated at the end of the bar near the pool table, approximately 35 feet away. Summit further testified that she watched Parsons closely because she did not expect to see him in her bar due to his telephone calls. She asked her friend Tim Janes, the security guard at the bar, to watch the defendant, stating, "Why is he here? He's making me nervous." Summit and Janes both testified that they saw the defendant and Cunningham have a couple of drinks and then walk to the pool table area where there were two alcoves:

one for bathrooms and the other for a cigarette machine, a computer, and stereo speakers. According to the testimony of both Summit and Janes, the two men stopped and studied the two alcoves, the defendant entered the cigarette machine alcove for three or four minutes, and then entered the men's bathroom for another four or five minutes. Janes and Summit both further testified that the defendant then came out of the bathroom, nodded to his companion Cunningham, shot one pool ball, and then, together with Cunningham, proceeded directly towards the front door of the bar.

Summit and Janes also testified that after the defendant left the men's bathroom, Summit immediately asked Janes to go into the bathroom to check it out. Without pause, Janes briefly went into the bathroom, where he looked under the sink, on the floor, above the ceiling tiles and behind the toilet for any damage and for an explosive device. When Janes came out of the bathroom, the defendant and his companion were just leaving the bar. As Summit asked Janes if he had found anything in the bathroom, the bathroom blew up. Its door blew open, its ceiling fell down, water came gushing out, and smoke alarms went off. Summit testified that she did not know how many customers had gone into the men's restroom over the previous five hours, but that the defendant was the last person other than Janes to exit that restroom before the explosion.

Summit and Janes testified that Janes then called the police and fire departments and soon two Chicago police officers responded. Officer Laurie Haughey inspected the premises and interviewed several customers, Summit, Janes, and Joe Franco regarding the incident. Haughey then called the bomb and arson unit of the Chicago police department, and an officer from that unit inspected the crime scene and later testified that an explosive device had been placed in the toilet tank. Summit also testified that shortly after the explosion and after the police had arrived, she received a telephone call from someone whom she identified as the defendant who said, "Hi, Margaret how you [sic] doing, ha, ha, ha. Your bar is out of business like mine." Summit handed the telephone to Officer Haughey. Haughey testified that the caller identified himself as "John." She discussed the explosion with him and asked him if he would mind returning to the bar, an invitation which he declined after denying involvement in the incident. Haughey stated that the same person called moments later, making the same statements to her as he made in the earlier call. The State also offered unchallenged testimony that revealed that the defendant was identified in a lineup two days after the explosion by Summit, Janes, and Franco.

The defendant and Cunningham both testified for the defense

that they were in the bar prior to the explosion, had had drinks and shot pool, but that the defendant had never inspected the cigarette alcove or went into the bathroom that night. The defendant also testified he had no explosive devices with him when he went to the bar. The defendant admitted to placing the first call to Summit's bar after the explosion from Cunningham's car telephone and to speaking to Summit and to Officer Haughey, but stated that he only asked for Susan Hanson when he called because he had not inquired as to her whereabouts while at Summit's bar. The defendant denied placing the second call to the bar.

During the conference on jury instructions, defense counsel asked the court to instruct the jury on the offense of criminal damage to property (see Ill. Rev. Stat. 1991, ch. 38, par. 21—1 (now 720 ILCS 5/21—1 (West 1994))), arguing that it was a lesser included offense of aggravated arson. The court refused the requested instruction. After the jury found the defendant guilty of aggravated arson, the defendant was sentenced to 15 years in the Illinois Department of Corrections.

During the hearing on defendant's sentencing, the State presented factors in aggravation, stating that the explosion was the culmination of a long period of harassment directed at Summit, which involved hundreds of harassing telephone calls and various threats. Further, the State noted that the defendant showed no remorse for his conduct, especially in light of his call to the bar immediately after the explosion, during which he allegedly gloated about blowing up part of Summit's bar, and that the defendant's conduct created a grave danger to the occupants of the bar even though no one was hurt. The defendant then presented factors in mitigation, including the testimony of his wife, who testified that the defendant had been a good father and had been supportive of his family and was a business owner. Defense counsel stated that the sentence should reflect that the explosive was merely a prank and should not be treated as a Class X felony.

At the close of the sentencing hearing, the trial court stated as follows:

> "I heard the evidence, and I don't think that it's necessary for there to be a specific intent to hurt somebody when they placed something in the toilet. But inasmuch as somebody just left that place, was [sic] certainly something that could be anticipated and I think it was very bad. I sentence you to 15 years in the Illinois Department of Corrections."

Defendant thereupon filed a motion for reduction of his sentence, which the trial court denied. Defendant also filed a motion for a new

trial on the grounds of newly discovered evidence. Attached to that motion were the affidavits of Valerie Johnson, Patricia Kocheny and Donald Zouras. The Johnson affidavit stated that a few weeks after defendant's trial, she overheard a conversation between the defendant and Susan Hanson. During this conversation, Johnson heard Hanson tell the defendant that Summit had lied about the defendant's guilt; that Summit had described the individuals who planted the bomb to Hanson and that Hanson said that Summit's description fit two individuals named Hank and Russell, rather than the defendant and Cunningham; that Hanson would have liked to have helped the defendant but that she was afraid that Summit would harm Hanson's child; and that Summit knew where Hanson was during the trial. The Zouras and Kocheny affidavits provided essentially the same allegations. They also stated that Summit lied because she hated the defendant and that the source of their allegations was an alleged conversation between Hanson and Summit which Hanson later related to these affiants. The trial court denied defendant's motion for a new trial.

## DISCUSSION

The defendant contends for the first time on appeal that his aggravated arson conviction should be reversed because his indictment was insufficient insofar as it did not state that defendant damaged property "by means of fire or explosive" pursuant to the language of the arson statute as invoked by the aggravated arson statute, set forth below. See 720 ILCS 5/20—1, 20—1.1 (West 1994). The defendant further contends that the trial court erred in failing to instruct the jury on the offense of criminal damage to property (Ill. Rev. Stat. 1991, ch. 38, par. 21—1 (now 720 ILCS 5/21—1 (West 1994))), which he contends is a lesser included offense of aggravated arson. The defendant also urges that the trial court erred in denying his motion for a new trial, which was based upon alleged newly discovered evidence, and that the trial court abused its discretion in imposing a sentence of 15 years. For the following reasons, we affirm.

■ We first address defendant's contention regarding the alleged insufficiency of his indictment. Where an indictment is challenged prior to trial, it must strictly comply with the pleading requirements of the Code of Criminal Procedure of 1963 (see 725 ILCS 5/111—1 *et seq.* (West 1994)) and, therefore, must, *inter alia*, set forth the nature and elements of the offense charged. *People v. Thingvold*, 145 Ill. 2d 441, 584 N.E.2d 89 (1991); *People v. Libbra*, 268 Ill. App. 3d 194, 643 N.E.2d 845 (1994). However, where, as here, the indictment is challenged for the first time on appeal, the standard is less stringent

(*People v. Maxwell*, 148 Ill. 2d 116, 592 N.E.2d 960 (1992); *People v. Pujoue*, 61 Ill. 2d 335, 335 N.E.2d 437 (1975); *Libbra*, 268 Ill. App. 3d 194, 643 N.E.2d 845); and the indictment is sufficient if it "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *Pujoue*, 61 Ill. 2d at 339, 335 N.E.2d at 440. See also *Libbra*, 268 Ill. App. 3d 194, 643 N.E.2d 845. In determining whether the indictment is sufficiently specific when challenged for the first time on appeal, the court may look not only to the indictment itself but also to the record to determine whether the defendant was fully apprised of all of the elements of the crime with which he was charged. See *Pujoue*, 61 Ill. 2d 335, 335 N.E.2d 437; *Libbra*, 268 Ill. App. 3d 194, 643 N.E.2d 845.

■ In the instant case, the indictment against the defendant charged that

> "on or about OCTOBER 25, 1992 at and within the County of Cook[,] JOHN PARSONS committed the offense of aggravated arson in that he knowingly damaged real property, to wit: the building located at 5820 North Broadway, in Chicago, Cook County, Illinois, and knew or reasonably should have known that one or more persons were present therein, in violation of Chapter 38, section 20—1.1(a) of the Illinois Revised Statutes 1989 as amended[.]"

Section 20—1.1(a) provides for the offense of aggravated arson, stating in pertinent part as follows:

> "A person commits aggravated arson when in the course of committing arson he knowingly damages, partially or totally, any building or structure *** and (1) he knows or reasonably should know that one or more persons are present therein ***." Ill. Rev. Stat. 1989, ch. 38, par. 20—1.1(a) (now 720 ILCS 5/20—1.1(a) (West 1994)).

The arson statute states that a "person commits arson when, by means of fire or explosive, he knowingly *** damages any real property *** of another without his consent." Ill. Rev. Stat. 1989, ch. 38, par. 20—1 (now 720 ILCS 5/20—1 (West 1994)).

Here, the State's failure to allege in defendant's indictment that he damaged property "by means of fire or explosive" did not prevent defendant from defending himself and will not preclude him from defending against any subsequent prosecution based upon the same conduct. *Pujoue*, 61 Ill. 2d 335, 335 N.E.2d 437; *Libbra*, 268 Ill. App. 3d 194, 643 N.E.2d 845. The indictment here set forth that defendant committed the offense of aggravated arson by knowingly damaging property on a specific date and at a specific address when he knew or reasonably should have known that people were present therein. The

record plainly shows that on the basis of this indictment, the defendant aggressively and specifically defended against the charge of setting off an explosive in the bathroom of Summit's bar. Moreover, there is no question here that the indictment is sufficient to preclude future prosecutions for the same conduct, because it states the date of the offense and the street address of the building in which it was committed. If anything, the fact that the indictment is broad on its face makes it sufficient to preclude the risk of double jeopardy for any form of damage to Summit's property, whether or not caused by fire or explosive. In any event, when read together with the record, the indictment sufficiently demonstrates that defendant was prosecuted specifically for setting off an explosive at Summit's His and Hers Lounge on October 25, 1992, and would therefore suffice to preclude double jeopardy. See *Pujoue*, 61 Ill. 2d 335, 335 N.E.2d 437 (when defending against a subsequent prosecution on the grounds of double jeopardy, a defendant is not confined in presenting his defense to reliance upon the former indictment alone, but may also resort to the record of the original conviction); *People v. Jones*, 53 Ill. 2d 460, 292 N.E.2d 361 (1973). See also *People v. Ballard*, 65 Ill. App. 3d 831, 835, 382 N.E.2d 800, 804 (1978) ("whether an indictment sufficiently charges an offense does not depend on nice attention to technicalities of pleadings or formalistic recital of allegations").

■ The defendant next contends that the trial court erred in failing to instruct the jury on the offense of criminal damage to property because it is a lesser included offense of aggravated arson. We disagree. If otherwise supported by the evidence presented, a defendant may be entitled to a jury instruction on a less serious offense that is included in the offense with which he has been charged. *People v. Bryant*, 113 Ill. 2d 497, 499 N.E.2d 413 (1986). Section 2—9 of the Criminal Code (720 ILCS 5/2—9 (West 1994)) defines an included offense as an offense that

> "(a) [i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or
>
> (b) [c]onsists of an attempt to commit the offense charged or an offense included therein."

■ Our supreme court has noted that the foregoing statutory definition does not specify what source to look at in order to determine whether a given offense is a lesser included offense of another. The courts have therefore developed three different approaches toward making that determination. *People v. Novak*, 163 Ill. 2d 93, 643 N.E.2d 762 (1994). These approaches, which were summarized in *Novak*, include the "abstract elements" approach, in which the ele-

ments of each offense are compared and an offense is considered to be a lesser included offense of another where it would be impossible to commit the greater offense without necessarily committing the lesser offense (see *People v. Files*, 260 Ill. App. 3d 618, 632 N.E.2d 1087 (1994); *People v. Wys*, 103 Ill. App. 3d 273, 431 N.E.2d 38 (1982)); the "charging instrument" approach, in which a court must look to the facts alleged in the charging instrument and may deem an offense to be lesser included if it is described by the charging instrument and if it has a " 'broad foundation in the instrument charging the greater,' or at least '[the indictment sets] out the main outline of the lesser. offense' " (*Novak*, 163 Ill. 2d at 107, 643 N.E.2d at 770, quoting *Bryant*, 113 Ill. 2d at 505, 499 N.E.2d at 416); and the "factual" or "evidence" approach, which looks to the facts adduced at trial on the offense charged (see *Wys*, 103 Ill. App. 3d 273, 431 N.E.2d 38). Moreover, regardless of the approach used, no such instruction on any lesser included offense is warranted unless, under a separate analysis of the evidence presented as discussed more fully below, it is found that a jury could rationally acquit the defendant of the greater offense and convict him of the lesser offense. *Novak*, 163 Ill. 2d 93, 643 N.E.2d 762.

After analyzing each of the foregoing approaches, the *Novak* court adopted the "charging instrument" approach for Illinois courts determining whether one offense is a lesser included offense of another. We must therefore examine the indictment in the instant case to determine whether the charges therein describe the offense of criminal damage to property or provide an outline or a broad foundation for that lesser offense. See, *e.g.*, *People v. Landwer*, 166 Ill. 2d 475, 655 N.E.2d 848 (1995) (holding under "charging instrument" approach that solicitation to commit aggravated battery was outlined in the defendant's solicitation-to-commit-murder indictment and, therefore, was a lesser included offense); *People v. Kimball*, 243 Ill. App. 3d 1096, 614 N.E.2d 273 (1993) (holding that aggravated assault was not outlined in the defendant's murder indictment because the charges did not indicate that the defendant placed the victim in reasonable apprehension of receiving a battery and, therefore, was not a lesser included offense); *Novak*, 163 Ill. 2d 93, 643 N.E.2d 762; *Bryant*, 113 Ill. 2d 497, 499 N.E.2d 413.

■ In the instant case, as noted, the indictment charges the defendant with committing the offense of aggravated arson by knowingly damaging Summit's bar while knowing that people were present therein. The criminal damage to property statute states in relevant part as follows:

"(1) A person commits an illegal act when he:

(a) knowingly damages any property of another without his consent; or

(b) recklessly by means of fire or explosive damages property of another; or

(c) knowingly starts a fire on the land of another without his consent ***." Ill. Rev. Stat. 1991, ch. 38, par. 21—1 (now 720 ILCS 5/21—1 (West 1994)).

■ It is apparent that the indictment in the instant case provides a sufficiently broad foundation to outline the offense of criminal damage to property as provided in subsection (a) of the criminal damage statute to support a characterization of the criminal damage offense as a lesser included offense under the "charging instrument" approach. As in subsection (a) of the criminal damage offense, the indictment here describes a knowing act of damage to Summit's property and by force of reason implies that defendant did the damage without consent. Moreover, the indictment would also provide a sufficient outline for subsections (b) and (c) of the criminal damage statute, where the charges against the defendant are read, as already discussed, to encompass the "by means of fire or explosive" language of the arson statute, and where the higher mental state of knowledge can be viewed to provide an outline for the mental state of recklessness. See *Landwer*, 166 Ill. 2d 475, 655 N.E.2d 848 (stating that specific intent to solicit a murder involves more culpable mental state than specific intent to solicit aggravated battery, such that under "charging instrument" approach, solicitation to commit aggravated battery is lesser included offense of solicitation to commit murder).

However, as already noted, our analysis of whether the trial court erred in instructing the jury on the criminal damage offense does not end with our determination that criminal damage to property is a lesser included offense of aggravated arson. Rather, under *Novak*, the entitlement to the lesser included offense instruction extends only if the evidence would rationally permit a jury to acquit the defendant of the greater offense and to determine that the defendant was guilty of the lesser offense. Hence, in *Novak*, the court stated:

"Once a lesser included offense is identified, the question remains whether the jury should be instructed on the lesser offense. The identification of a lesser included offense does not automatically give rise to a lesser offense. [Citation]. Rather an 'independent prerequisite' must be met for the giving of a lesser included offense instruction [citation], regardless of the approach used in identifying the lesser included offense. ***

A defendant is entitled to a lesser included offense instruction only if the evidence would permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense." *Novak*, 163 Ill. 2d at 107-08, 643 N.E.2d at 770.

See also *People v. Smith*, 274 Ill. App. 3d 84, 653 N.E.2d 944 (1995). Accord *People v. Teague*, 108 Ill. App. 3d 891, 906, 439 N.E.2d 1066, 1077 (1982) ("where the evidence shows the accused is either guilty of the higher offense or not guilty of any offense, an instruction on the lower offense is unnecessary and properly refused"); *People v. Thompson*, 35 Ill. App. 3d 773, 342 N.E.2d 445 (1976).

While it may be argued in the instant case that the evidence presented by the State as to the aggravated arson charge could also support a guilty verdict for the lesser included offense of criminal damage to property, a jury could not rationally acquit the defendant of the greater charge of aggravated arson so as to confine its guilty verdict solely to the lesser included offense. See *Novak*, 163 Ill. 2d 93, 643 N.E.2d 762; *Smith*, 274 Ill. App. 3d 84, 653 N.E.2d 944. As noted, there was testimony presented as to the defendant's motive and intent to set off the explosive in Summit's bar, that defendant was in the bar while several other people were also present, that he acted suspiciously, that he was the last person in the bathroom besides Janes before the explosion occurred, and that he telephoned the bar shortly after he left to gloat over his accomplishment of setting off the explosive that evening. There is no rational basis on which a jury could separate the evidence of the implantation of the explosive device from the evidence that showed that the implantation was intentional and was performed with reason to know that other people were present in the bar. See *Teague*, 108 Ill. App. 3d 891, 439 N.E.2d 1066; *Thompson*, 35 Ill. App. 3d 773, 342 N.E.2d 445. Consequently, there was no rational basis for acquitting the defendant of the greater offense and for convicting him only of the lesser included offense. See *Novak*, 163 Ill. 2d 93, 643 N.E.2d 762; *Smith*, 274 Ill. App. 3d 84, 653 N.E.2d 944.

Moreover, we also note, although unnecessary to our resolution of the instant dispute, that even if there had been an entitlement to an instruction on the lesser included offense of criminal damage to property, the evidence regarding the greater offense was so strong that any failure to instruct on the lesser would not have been prejudicial. See *People v. McClellan*, 232 Ill. App. 3d 990, 600 N.E.2d 407 (1992) (even if an instruction on a lesser offense might have been given, the failure to give an otherwise appropriate jury instruction will require reversal only if the defendant was so prejudiced by such

failure as to affect the outcome of the verdict); *People v. Fonville*, 158 Ill. App. 3d 676, 511 N.E.2d 1255 (1987).

The defendant next contends that the trial court erred in denying his motion for a new trial, which was based on the affidavits attached to that motion as set forth above which purport to reveal that Summit recanted her testimony against the defendant in conversations with Hanson as overheard by the affiants. We find this contention to be without merit.

> "It has long been recognized that evidence of recantation is inherently unreliable and insufficient to warrant a new trial. [Citation.] A court will usually deny a new trial based on the ground of recanted testimony where it is not satisfied that such testimony is true. [Citation.] Only in extraordinary and unusual cases will recanting testimony of witnesses be regarded as sufficient ground for a new trial." *People v. Dempsey*, 242 Ill. App. 3d 568, 586, 610 N.E.2d 208 (1993).

See also *People v. Hallom*, 265 Ill. App. 3d 896, 638 N.E.2d 765 (1994) (newly discovered evidence that only has the effect of impeaching, discrediting, or contradicting a witness is insufficient to justify a new trial).

Our supreme court in *People v. Miller*, 79 Ill. 2d 454, 404 N.E.2d 199 (1980), set forth the factors to be considered on the review of an order denying a motion for a new trial:

> " 'A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial judge and denial thereof will not be disturbed upon review in the absence of a showing of an abuse of discretion. [Citation.] To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. [Citations.]' *** 'Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and to show that there had been no lack of diligence. ***' [Citations.]" *People v. Miller*, 79 Ill. 2d at 464-65, 404 N.E.2d at 204.

■ We hold that the trial court properly denied defendant's motion for a new trial, because the evidence, if believed, is not of such a

conclusive character that it would probably change the result on retrial. The affidavits attached to that motion purport to cast doubt upon Summit's testimony against the defendant through highly unreliable hearsay. As noted, the Johnson affidavit avers that Johnson overheard Susan Hanson, the defendant's estranged mistress, tell the defendant that after the defendant's trial, Summit described the men who set the explosive to Hanson, and Hanson believed that they fit the description of persons named Hank and Russell, not of the defendant and Cunningham. Johnson also averred in her affidavit that she heard Hanson tell the defendant that Hanson would have helped him but for her fear that Summit would harm Hanson's child, and Johnson further averred that she heard Hanson tell the defendant that Summit knew where Hanson was during the trial. Similarly, Zouras and Kocheny averred in their affidavits that they heard the same allegations and that Summit had lied because she hated the defendant, allegations which derived from an alleged conversation between Hanson and Summit as related to the affiants by Hanson. These hearsay upon hearsay statements, which purport to report the remarks of the potentially biased alleged mistress of the accused regarding Summit's supposed contradiction of her trial testimony, are not in the nature of conclusive evidence which, if believed, would probably change the result on retrial. *Miller*, 79 Ill. 2d 454, 404 N.E.2d 199.

Moreover, the evidence adduced at trial, independent of Summit's testimony, was sufficient by itself to support the defendant's conviction. As noted, Timothy Janes presented essentially the same testimony as Summit did, and the defendant does not purport to have new evidence that would discredit that testimony. Janes testified that he saw the defendant in the bar that night, saw him act suspiciously, and identified the defendant as the last person to leave the bathroom prior to the explosion. The defendant himself admitted to having called the bar that night shortly after the explosion and after he left the bar, but denied having gloated about destroying the bathroom in that conversation and instead stated that he had called the bar only to ask if Hanson was there, without explaining why he did not inquire into her whereabouts while at the bar earlier in that same hour. Moreover, the defendant was identified as the perpetrator of the explosion in a lineup two days after the explosion in Summit's bar, not only by Summit, but also by Janes and Franco. We cannot say that, in light of this evidence, there was any abuse of discretion in denying defendant's new trial motion or that a retrial would probably change the result.

The defendant relies on the decision in *People v. Villareal*, 201

Ill. App. 3d 223, 559 N.E.2d 77 (1990), in support of his contention that a new trial is warranted here because according to his new trial affidavits Summit lied at trial. However, the decision in *Villareal* is inapposite. In that case, new evidence was discovered after trial which revealed that the State's sole eyewitness to the defendant's allegedly criminal conduct had given false testimony. The court noted that because that witness was the only eyewitness to events central to the conviction, a new trial was required. Unlike the evidence presented at trial in *Villareal*, here there were multiple eyewitnesses and other circumstances already discussed which support the defendant's conviction even absent Summit's testimony.

■ The defendant next contends that the trial court erred in denying his motion to reduce the 15-year term of his sentence because he had no prior felony convictions, owned his own business, supported his family, and because his alleged crime was really in the nature of a prank where no one was injured. We disagree. It is well established that the trial court is generally in the best position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review. *People v. Cabrera*, 116 Ill. 2d 474, 508 N.E.2d 708 (1987). Many factors enter into sentencing determinations, such as the nature of the crime, the protection of the public, deterrence, and punishment, as well as the defendant's rehabilitative prospects and youth. *People v. Whitehead*, 171 Ill. App. 3d 900, 525 N.E.2d 1084 (1988). Therefore, the trial court is vested with wide discretion in imposing sentences (*People v. Hattery*, 183 Ill. App. 3d 785, 539 N.E.2d 368 (1989)), and its decision may not be disturbed absent an abuse of discretion. *Cabrera*, 116 Ill. 2d 474, 508 N.E.2d 70; *People v. Almo*, 108 Ill. 2d 54, 483 N.E.2d 203 (1985).

Here, as noted, in addition to all of the evidence presented at trial, the trial court heard both factors in aggravation and in mitigation before sentencing the defendant. The State urged in aggravation that the defendant had programmatically harassed Summit with hundreds of telephone calls and with threats, gloated after the explosion, and risked lives with his alleged conduct although nobody had been hurt. The defendant submitted in mitigation that there was no evidence of the intent to injure anyone, and also submitted his wife's testimony, who stated that the defendant was a good father, supportive of their family, and was a business owner. After hearing the testimony, the trial court sentenced the defendant to 15 years' imprisonment. We cannot say that on the basis of all of the evidence at trial and the factors presented in aggravation and mitigation that the trial court abused its discretion in imposing this sentence.

■ We also reject the defendant's contention that his sentence should be reduced because the trial court allegedly improperly relied on the defendant's remorselessness (see *People v. Evans*, 143 Ill. App. 3d 236, 492 N.E.2d 1036 (1986)) and on his knowledge that other people were in the bar, an element of aggravated arson (see *People v. Saldivar*, 113 Ill. 2d 256, 497 N.E.2d 1138 (1986)), and because the trial court disregarded comparable federal sentencing guidelines when determining the defendant's sentence. We first note that defendant points to no authority in support of his apparent contention that federal sentencing guidelines should have played some role in the trial court's sentencing procedure, and he has therefore waived that argument. See 155 Ill. 2d Rs. 341(e)(7), 612(i); *In re Marriage of Winton*, 216 Ill. App. 3d 1084, 576 N.E.2d 856 (1991); *Bank of Illinois v. Thweatt*, 258 Ill. App. 3d 349, 630 N.E.2d 121 (1994). Moreover, with respect to the possibility that the trial court improperly relied on the defendant's remorselessness or on the presence of other people in the bar when sentencing the defendant, we note that these factors are not dispositive in light of the mass of other evidence and factors presented in the trial court, as already noted, available as premises for the defendant's sentence. We therefore cannot find that there was any abuse of discretion in the imposition of the sentence. See also *People v. Partin*, 156 Ill. App. 3d 365, 509 N.E.2d 662 (1987) (there is a strong presumption that a trial court considered any evidence of mitigation before it and based the defendant's sentence upon proper legal reasoning).

■ Finally, the defendant would urge that his sentence was greater than the 6- to 10-year sentence suggested by the State in a plea proposal rejected by the defendant before electing to proceed to a jury trial, and that therefore, he was penalized by the trial court for invoking his right to trial by jury. This contention is without merit. A trial court is free to accept or reject any sentencing recommendations whether made by the prosecution or the defense, and in the absence of a plea agreement accepted by the court, no recommendation by counsel is binding on the court. *People v. Sanders*, 198 Ill. App. 3d 178, 555 N.E.2d 812 (1990). Moreover, there is nothing inherently unconstitutional in increasing a sentence after trial. Such an increase need not connote the imposition of a penalty because the defendant elected to proceed to trial, but, rather, the disparity may simply reflect an inducement given to a defendant to plea bargain in exchange for a sentence less than that which is ordinarily warranted. That, by itself, is not unlawful. See *Sanders*, 198 Ill. App. 3d 178, 555 N.E.2d 812. We also note that, in this case, the defendant took the stand as a witness and denied his involvement in the explosion in

Summit's bar. Under those circumstances, the court may well have been within its discretion to consider the defendant's perjury as a factor in aggravation. See *People v. Denton*, 256 Ill. App. 3d 403, 628 N.E.2d 900 (1993). As already noted, after trial, the State recommended a sentence of 20 years' imprisonment. Except for the fact that a greater sentence than that proposed by the State in plea negotiations was ultimately imposed upon the defendant, defendant provides no other evidence that his sentence was a penalty for his election to proceed to a trial by jury, and, therefore, we do not view his sentence in that respect as an abuse of discretion.

As part of this order we grant the State's motion and assess defendant $100 as costs for this appeal.

In all other respects, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNULTY, P.J., and COUSINS, J., concur.