# Illinois Official Reports

## Appellate Court

---

### *People v. Taylor*, 2018 IL App (4th) 140060-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STATEN D. TAYLOR, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0060 |
| Filed<br>Rehearing denied | March 21, 2018<br>April 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 13-CF-418; the Hon. Timothy J. Steadman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Aliza R. Kaliski, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion. Justices Steigmann and DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1        A jury found defendant, Staten D. Taylor, guilty of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2012)) for beating his brother-in-law. The Macon County circuit court sentenced defendant to 15 years in prison. Defendant appealed, claiming (1) he was denied a fair trial on several grounds, (2) his trial attorney rendered ineffective assistance, (3) the court failed to give adequate consideration to his *pro se* allegations of ineffective assistance of counsel, and (4) his sentence was excessive. We affirmed defendant's convictions, finding (1) he forfeited review of the errors he claimed had deprived him of a fair trial, (2) his ineffective assistance of counsel claims should be raised in postconviction proceedings where a better record can be made, (3) the court conducted an adequate *Krankel* inquiry (*People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)) into his *pro se* posttrial allegations of ineffective assistance of counsel, and (4) his sentence was not excessive. *People v. Taylor*, 2015 IL App (4th) 140060, 44 N.E.3d 1234. Defendant filed a petition for leave to appeal with the Supreme Court of Illinois.

¶ 2        On September 27, 2017, the supreme court denied defendant's petition for leave to appeal but issued a supervisory order (*People v. Taylor*, No. 120425 (Ill. Sept. 27, 2017) (nonprecedential supervisory order on denial of petition for leave to appeal)), directing this court to vacate our prior judgment and reconsider our decision in light of *People v. Veach*, 2017 IL 120649, 89 N.E.3d 366. There our supreme court noted "ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim." *Veach*, 2017 IL 120649, ¶ 46. On remand to this court, the parties filed supplemental briefs, addressing the application of the *Veach* decision to the facts of this case. On December 1, 2017, this court filed a new opinion, in which we reconsidered our decision in light of *Veach* and again found defendant's ineffective assistance of counsel claims should be raised on collateral review because they depended on proof of matters outside the appellate record.

¶ 3        Defendant filed a petition for rehearing, asserting this court's December 2017 opinion failed to meaningfully address *Veach* and acknowledge the parties' supplemental briefs on remand. We granted defendant's petition for rehearing. The State filed an answer to the petition for rehearing, and defendant filed a reply to the answer. This court has again reconsidered defendant's ineffective assistance of counsel arguments in light of *Veach* and now addresses those claims. We affirm the circuit court's judgment.

## I. BACKGROUND

¶ 5        Dawnette Sigmon, defendant's estranged wife, began living in a rented single-family home on Church Street in Decatur with her three young children in September 2012, a few months before she met defendant. Dawnette and defendant met in November 2012 and married in January 2013. Dawnette asked defendant to move out of the home in March 2013 after an undisclosed "incident." After this "incident," Dawnette and her children frequently stayed with a friend in Warrensburg. Whenever Dawnette wanted to return to her Church Street home, she would call on her brother, Jashua Sigmon, to check the home to ensure no one, meaning defendant, was there. On April 5, 2013, she reached out to Jashua and asked for a security check of the home.

¶ 6        Jashua testified at defendant's jury trial that on April 5, 2013, he received a call from his sister, asking him to check on her house. At approximately 10 p.m., Jashua drove to the Church Street residence, where he saw defendant standing in the driveway, talking to individuals in a van from the van's driver's side window. Jashua parked his vehicle behind the van and approached defendant, telling defendant he was not supposed to be there. Defendant told Jashua that Dawnette had given him permission to stay there for the last few days. As Jashua approached, defendant shoved him, and Jashua shoved defendant back. Defendant punched Jashua in the face. Jashua grabbed defendant in an attempt to take him to the ground. An unidentified man exited the van and grabbed Jashua from behind, holding his arms behind his back while defendant continuously punched Jashua in the face. The man threw Jashua to the ground, where defendant and the man repeatedly kicked Jashua in his back. Jashua crawled to his vehicle while being kicked. He estimated the two men kicked him between 15 and 25 times. Defendant eventually told the man to stop the beating, saying Jashua had enough to know not to " 'come around here anymore.' "

¶ 7        Jashua made it to his car and drove home, where he and his girlfriend cleaned the blood from his face. He said he did not want to call the police because he was on parole and he feared he would be sent back to prison. He went to the emergency room, where he was diagnosed with a broken nose. He was released after several hours and had surgery to repair his nose several days later.

¶ 8        Dawnette also testified, corroborating Jashua's testimony regarding her request for the welfare check on her home. She denied giving defendant permission to be at her house. She said his name was not on the lease, he did not contribute to the rental payments, and he did not have a key.

¶ 9        Jason Danner, a Decatur police officer, testified he met with Jashua after the hospital had called the police to report the battery incident. Officer Danner said both Jashua and Dawnette cooperated with his investigation. After speaking with the siblings, Officer Danner drove to the Church Street residence, hoping to find defendant. He eventually saw defendant at the house and arrested him there. Officer Danner noticed defendant had a cut on his finger and his fists were red and swollen.

¶ 10        In defendant's case in chief, he presented, by stipulation, the testimony of Greg Bell, defendant's parole officer. If Bell were called to the witness stand, he would testify that defendant was on parole on the date of the incident. He would also testify that defendant's home record listed his address as the Church Street residence.

¶ 11        After deliberations, the jury found defendant guilty of aggravated domestic battery. Defendant filed a *pro se* motion for ineffective assistance of counsel. The circuit court conducted a *Krankel* hearing, wherein defendant complained his counsel did not (1) introduce evidence on his behalf at trial, (2) meet with him to discuss the trial, and (3) discuss the State's plea offer before trial. The court asked defendant to explain each allegation in detail. The court then asked defendant's counsel to respond. To the court's satisfaction, counsel explained the issues complained of were either (1) matters involving trial strategy or (2) nonmeritorious. The court denied defendant's motion.

¶ 12        Counsel filed a posttrial motion, claiming the State's evidence was insufficient to support the jury's verdict. The court denied the motion and proceeded to sentencing. We note that, on the day before the sentencing hearing, defendant filed a *pro se* motion "appealing" the circuit court's denial of his claims of ineffective assistance of counsel.

¶ 13    At sentencing, defendant testified on his own behalf in mitigation. He said that, at the time of the incident, he and Dawnette were married and living together. He was employed and contributing to the household expenses. They were expecting a child together. With regard to the incident, defendant explained he attempted to break up the fight between the unidentified male and Jashua. He said he spoke with Jashua after the incident and apologized. They maintain a personal relationship. Defendant admitted he has a problem with alcohol addiction.

¶ 14    During sentencing recommendations from counsel, the State advised the court defendant was to be sentenced as a Class X offender because he had twice previously been convicted of residential burglary, a Class 1 felony, in 1995 and 2001. See 730 ILCS 5/5-4.5-95(b) (West 2012). After considering defendant's testimony, the presentence investigation report, counsels' recommendations, and the statutory factors in aggravation and mitigation, the circuit court sentenced defendant to 15 years in prison.

¶ 15    Defendant filed two *pro se* motions, challenging his sentence as excessive. The circuit court gave counsel the opportunity to file an amended motion on defendant's behalf. Counsel explained to the court defendant had filed a complaint with the Illinois Attorney Registration and Disciplinary Commission (ARDC) regarding his representation. The court asked defendant if he wished counsel to represent him in his motion to reduce his sentence. Defendant replied: "I'm fine with him." Counsel stood on defendant's *pro se* motions, providing no additional argument. The court denied defendant's motions.

¶ 16    This appeal followed.

## II. ANALYSIS

¶ 18    Defendant raises several contentions of error, including allegations he was denied a fair trial, his counsel was ineffective, and his sentence was excessive. Specifically, with regard to his fair trial claims, he argues (1) the State elicited statements from his wife in violation of the marital privilege, (2) the jury was not given an instruction regarding the impeachment of Jashua's testimony based upon his prior convictions, and (3) the prosecutor in the State's closing argument improperly vouched for Jashua's and Dawnette's credibility, misstated Jashua's testimony, and improperly implied Dawnette feared a violent confrontation with defendant. Defendant also claims (1) the circuit court failed to adequately inquire into his *pro se* allegations of ineffective assistance of counsel, (2) his 15-year sentence was excessive, and (3) his counsel rendered ineffective assistance of counsel throughout the trial. We address each contention in turn.

## A. Marital Privilege

¶ 20    In Illinois, neither spouse may testify against the other as to any conversation, communication, or admission made between them or against the other in criminal cases, unless a spouse is charged with an offense against the other. 725 ILCS 5/115-16 (West 2012). The purpose of this privilege is "intended to further marital harmony, mutual understanding and trust by encouraging full disclosure, free communication, and confidential communications between spouses." *People v. Trzeciak*, 2013 IL 114491, ¶ 41, 5 N.E.3d 141. Our supreme court has narrowed the application of this privilege to only communications intended to be confidential. *Trzeciak*, 2013 IL 114491, ¶ 42. "There is a presumption that communications between spouses, privately made, are intended to be confidential. However, where it appears from the nature or circumstances under which the communication was made that

confidentiality was not intended, the communication is not privileged." *Trzeciak*, 2013 IL 114491, ¶ 42.

¶ 21    Two elements must be met before a communication between spouses is deemed privileged. First, the statement must convey a message. Second, the message must be intended to be confidential. *Trzeciak*, 2013 IL 114491, ¶ 44.

¶ 22    The statements defendant is challenging in this appeal are from Dawnette's testimony at trial where she reiterated the voicemail messages defendant purportedly left on her telephone after the incident. Dawnette testified defendant left a voicemail message indicating he was sorry for fighting Jashua and asked if he could come home. Specifically, Dawnette testified defendant said he "was sorry for fighting [her] brother, that he shouldn't have been there, that it shouldn't have happened, and he wished it didn't happen like that."

¶ 23    Defendant claims his statements to Dawnette were "undoubtedly intended to be confidential," in that they were pleas to save their marriage. Thus, he asserts those statements were inadmissible. However, defendant forfeited review of this issue by failing to (1) invoke the privilege during Dawnette's testimony (see *People v. Hall*, 194 Ill. 2d 305, 334-35, 743 N.E.2d 521, 539 (2000)) and (2) object to the admission of this evidence at trial and raise the issue in a posttrial motion (see *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988)). In his original brief, defendant asked us to apply the plain-error doctrine or review the issue for ineffective assistance of counsel based on counsel's failure to object to Dawnette's testimony. Our supreme court has directed us to consider the effect of its *Veach* decision on whether defendant's ineffective assistance of claim may be properly considered on direct appeal. *Taylor*, No. 120425 (Ill. Sept. 27, 2017).

¶ 24    In his supplemental brief on remand, defendant contended that, in light of *Veach*, this court should now decide his three ineffective assistance of counsel claims. He addressed the merits of his three claims in the brief as well. In its brief, the State addressed the merits of the three ineffective assistance of counsel claims. We again reconsider defendant's claims in light of *Veach* and find the record is sufficient to review defendant's claim.

¶ 25    This court evaluates ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). For a successful ineffective assistance of counsel claim, a defendant must demonstrate (1) defense counsel's performance fell below an objective standard of reasonableness *and* (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93. Further, the defendant must overcome the strong presumption that the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93. Additionally, the *Strickland* Court noted that, when a case is more easily decided on the ground of lack of sufficient prejudice rather than that counsel's representation was constitutionally deficient, the court should do so. *Strickland*, 466 U.S. at 697.

¶ 26    As to the prejudice prong, defendant contends he suffered prejudice from Dawnette's testimony about his voicemail messages to her because the evidence was close. We disagree.

Jashua testified that, as he approached defendant, defendant shoved him. Jashua shoved defendant back, and defendant punched him in the face. When Jashua grabbed defendant, an unidentified man grabbed Jashua from behind and held Jashua's arms behind his back while defendant continuously punched Jashua in the face. The man threw Jashua to the ground, and defendant and the man kicked Jashua in the back between 15 and 25 times. Jashua eventually went to the emergency room, where he was diagnosed with a broken nose. Officer Danner, who arrested defendant after speaking with Jashua and Dawnette, noticed defendant had a cut on his finger and his fists were red and swollen. Jashua's version of the events was not refuted. During closing arguments, defense counsel conceded defendant battered Jashua. Defendant only challenged whether Jashua suffered great bodily harm. Defendant contends the evidence was close because (1) the evidence conflicted on whether defendant had a right to be at Dawnette's home, (2) the evidence suggested Dawnette sent Jashua to her house knowing he would find defendant, (3) Jashua was on parole for home invasion and armed robbery, and (4) Jashua did not contact the police or Dawnette after the altercation. Those contentions do not call into question Jashua's unrefuted version of the facts. We disagree with defendant that significant weakness existed in Jashua's and Dawnette's narratives. Accordingly, we find defendant failed to establish the prejudice prong of the *Strickland* test, and thus he cannot establish ineffective assistance of counsel based on counsel's failure to raise the marital privilege. Additionally, since defendant's plain-error argument rests on his contention the evidence was closely balanced and we have disagreed with that contention, defendant's plain-error argument also fails.

¶ 27                    B. Failure to Give Jury Instruction on Prior Convictions

¶ 28      Defendant next claims he was denied a fair trial because Jashua testified he had two prior convictions and the circuit court failed to give Illinois Pattern Jury Instruction, Criminal, No. 3.12 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.12), which states, "[e]vidence that a witness has been convicted of an offense may be considered by you only as it may affect the believability of the witness." Defendant contends IPI Criminal 4th No. 3.12 is a mandatory instruction. Defendant has again forfeited this issue by failing to raise an objection during the trial court proceedings. See *Enoch*, 122 Ill. 2d at 186. As with the marital privilege, defendant asked us to apply the plain-error doctrine or review the issue for ineffective assistance of counsel based on counsel's failure to tender IPI Criminal 4th No. 3.12.

¶ 29      In our original opinion, we found the circuit court did not err. Generally, the circuit court is under no obligation to give instructions not tendered. *People v. Barrow*, 133 Ill. 2d 226, 266, 549 N.E.2d 240, 258 (1989). In *Barrow*, our supreme court found no reversible error for failing to give the jury IPI Criminal 4th No. 3.12. *Barrow*, 133 Ill. 2d at 267. The court found defendant had forfeited the issue, but it also found no error despite the fact the prosecutor, the trial judge, and defense counsel had told the jury it should judge the credibility of the State's witness, a convicted felon, by the same standard as any other witness. However, counsel also reminded the jury that the witness had been convicted and argued that he should not be believed. *Barrow*, 133 Ill. 2d at 267. Additionally, the committee notes do not indicate IPI Criminal 4th No. 3.12 is a mandatory instruction. It would have been up to defendant to tender the instruction if he sought to undermine Jashua's credibility. He failed to do so.

¶ 30      Next, in our original opinion, we declined to address defendant's alternative argument his attorney rendered ineffective assistance of counsel by failing to tender IPI Criminal 4th No.

3.12, finding the record was insufficient to address it. However, as previously stated, we now find the record is sufficient to consider defendant's argument.

¶ 31    As with defendant's marital privilege argument, we apply the two-pronged test of *Strickland* to defendant's claim. *Strickland*, 466 U.S. at 687. Regarding prejudice, defendant again asserts the evidence is close. However, we have already found that is not the case. In light of the strong evidence against defendant, the result of defendant's trial would not have been different even if defense counsel had requested IPI Criminal 4th No. 3.12. Moreover, the lack of an instruction allowed the jury to consider Jashua's prior convictions against him without limitation. Accordingly, we find defendant failed to establish the prejudice prong of the *Strickland* test as to his claim of ineffective assistance of counsel based on counsel's failure to request IPI Criminal 4th No. 3.12. As with the marital privilege issue, defendant's plain-error argument also fails because we have found the evidence was not closely balanced.

¶ 32                    C. State's Closing Argument

¶ 33    Defendant contends that, in closing arguments, the prosecutor improperly vouched for the credibility of Jashua and Dawnette, which deprived him of a fair trial when the State's case centered solely on the witnesses' credibility. Specifically, the prosecutor stated both witnesses were credible because they cooperated with the police. Defendant also claims the prosecutor improperly implied Dawnette feared a violent confrontation would occur if she went home and found defendant there. Defendant failed to pose any objection during the argument and likewise failed to raise the contentions of error in a posttrial motion. Therefore, defendant has forfeited this argument for appellate review. See *Enoch*, 122 Ill. 2d at 186. Like the previous two issues, he contends we should review this issue under the plain-error doctrine or for ineffective assistance of counsel. We begin by examining whether the prosecutor's comments were improper.

¶ 34    Our supreme court has explained closing arguments as follows:

> "The purpose of closing arguments is to give the parties a final opportunity to review with the jury the admitted evidence, discuss what it means, apply the applicable law to that evidence, and argue why the evidence and law compel a favorable verdict. [Citation.] A prosecutor has wide latitude in making a closing argument. [Citation.] In closing, the prosecutor may comment on the evidence and any fair, reasonable inferences it yields [citation], even if such inferences reflect negatively on the defendant [citation]." (Internal quotation marks omitted.) *People v. Nicholas*, 218 Ill. 2d 104, 121, 842 N.E.2d 674, 685 (2005).

Moreover, the supreme court has recognized a prosecutor's closing argument may reflect upon a witness's credibility if it is based on facts in the record or inferences fairly drawn from those facts. *People v. Shum*, 117 Ill. 2d 317, 348, 512 N.E.2d 1183, 1194 (1987). "In addition, a prosecutor is permitted to discuss subjects of general knowledge, common experience, or common sense in closing argument." *People v. Beard*, 356 Ill. App. 3d 236, 242, 825 N.E.2d 353, 359 (2005).

¶ 35    Here, defendant challenges the prosecutor's comment to the jury Jashua was cooperative with the police, "which is how you would expect the victim of a crime like this to act and corroborates his testimony." He also challenges the prosecutor's comment Dawnette was cooperative, "which corroborates her testimony and bolsters her credibility." Evidence was presented at trial showing Jashua and Dawnette were cooperative with the police investigation.

- 7 -

Moreover, it is common sense and experience a crime victim would cooperate with the police. Thus, it naturally flows cooperation with the police is indicative of credibility. Accordingly, we find the prosecutor's comments about credibility were a fair inference from the trial evidence.

¶ 36    Further, this case is distinguishable from *People v. Bell*, 152 Ill. App. 3d 1007, 505 N.E.2d 365 (1987), which defendant cited in support of his argument. There, the prosecutor stated the following: "What we know is people have a human, natural, impulsive desire to tell the truth, to confess when they've done something bad; to tell the honest, true version of what has happened ***." (Internal quotation marks omitted.) *Bell*, 152 Ill. App. 3d at 1018. The Third District found the comment was improper because the remark lacked any basis in the evidence and was an attempt to add further weight to the defendant's tape recorded confession. *Bell*, 152 Ill. App. 3d at 1018. The reviewing court also found the prosecutor improperly stated her personal opinion concerning the truth of the taped statement because "[a] prosecutor may not interject his personal belief in the veracity of a witness' testimony." *Bell*, 152 Ill. App. 3d at 1018. In this case, the evidence showed the witnesses assisted the police, and it is common experience for victims to cooperate with the police. Additionally, this court has held that, "for a prosecutor's closing argument to be improper, he must *explicitly* state that he is asserting his personal views, stating for example, 'this is my personal view.' " (Emphasis in original.) *People v. Pope*, 284 Ill. App. 3d 695, 707, 672 N.E.2d 1321, 1329 (1996). Here, the prosecutor did not state it was his personal view.

¶ 37    Defendant also challenges the prosecutor's statement that Dawnette wanted Jashua "to make sure [her house] was secure so that she could return there that evening with her children without having to worry about any confrontation taking place or what was going to happen." He claims the statement suggests Dawnette feared a confrontation with defendant and invited the jury to speculate that defendant might be violent. Defendant further contends no evidence was presented Dawnette feared defendant.

¶ 38    "Confrontation" has the following definitions: (1) "face-to-face meeting," (2) "the clashing of forces or ideas: conflict," and (3) "comparison." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/confrontation (last visited Jan. 26, 2018). None of the definitions include violence. In fact, the example for the second definition, "a violent confrontation between rival gangs," adds the adjective "violence" to indicate violence. (Emphasis omitted). Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/confrontation (last visited Jan. 26, 2018). Thus, we disagree with defendant that the prosecutor's statement invited the jury to speculate whether defendant might be violent.

¶ 39    Moreover, we find the prosecutor's statement about a confrontation was based on the trial evidence. Dawnette testified she asked Jashua to check on her house because she was ready to go home. She wanted Jashua to secure the house and make sure no one was there, so she "could go home and everything would be okay." Dawnette testified it was common practice for her to ask Jashua to secure her residence before she returned home. She did so because of a prior incident with defendant. On the day of the battery, she had not been home in a week because of a "prior incident." Jashua also testified it was common practice for Dawnette to ask him to go to her home and make sure defendant was not there. Due to the fact Dawnette had a common practice of asking Jashua to make sure defendant was not at the home when she returned, it is a reasonable inference she feared a confrontation with defendant.

¶ 40  Since we have found the prosecutor's statements were proper, defendant has failed to establish both that defense counsel was ineffective for failing to object to them and plain error.

¶ 41  ### D. *Krankel* Inquiry

¶ 42  Defendant claims the circuit court did not adequately inquire into his *pro se* allegations of ineffective assistance of counsel. In particular, defendant argues the circuit court did not inquire into the ARDC complaint defendant had filed relating to counsel's representation. The law requires a circuit court to conduct some type of inquiry into a defendant's *pro se* claim of ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 78, 797 N.E.2d 631, 637 (2003). Thus, the concern is " 'whether the trial court conducted an adequate inquiry' into the allegations." *People v. Peacock*, 359 Ill. App. 3d 326, 339, 833 N.E.2d 396, 407 (2005) (quoting *Moore*, 207 Ill. 2d at 78). In our original opinion, we concluded that the circuit court's inquiry was adequate. In his supplemental brief, defendant asks us to reconsider our original holding on this issue. However, our supreme court specifically directed us to consider the effect of the *Veach* decision on whether defendant's ineffective assistance of counsel claims could be properly considered on direct appeal. *Taylor*, No. 120425 (Ill. Sept. 27, 2017). This issue is outside the supreme court's directions on remand, and thus we decline to reconsider this issue. The following is our original disposition of the issue.

¶ 43  On August 25, 2013, approximately 10 days after defendant's jury trial, defendant filed a handwritten letter, stating he was not happy with counsel's representation. On August 29, 2013, defendant filed a handwritten "motion for ineffective counseling." The circuit court, the Honorable Scott B. Diamond, presiding, filed a letter in response, addressed to defendant, indicating defendant's filings had "trigger[ed] a '*Krankel'* hearing." On October 10, 2013, the circuit court, the Honorable Timothy J. Steadman, presiding, conducted a *Krankel* hearing. At the hearing, the court asked defendant to explain his allegations "one at a time." After defendant mentioned each of his complaints, the court addressed defendant's counsel and asked him to respond. After considering defendant's and counsel's arguments, the court denied defendant's motion.

¶ 44  In January 2014, Judge Steadman conducted a hearing on counsel's motion to reconsider defendant's sentence. Prior to beginning the hearing, counsel informed the court defendant had filed an ARDC complaint against him. The court asked defendant if he wanted "an attorney to represent [him] on this motion to reduce sentence." Defendant responded: "No, I'm fine with him."

¶ 45  In this case, the circuit court satisfied the inquiry requirement set forth in *Moore*. The court gave defendant ample opportunity to explain each of his allegations. The court questioned defendant and trial counsel, and therefore, it adequately inquired into and considered defendant's allegations in his filings with the court. *Cf. Peacock*, 359 Ill. App. 3d at 339-40.

¶ 46  ### E. Sentence

¶ 47  Defendant contends his 15-year sentence is excessive given (1) the State had previously offered him a 4-year plea agreement, (2) the circumstances of the case favored a lesser sentence, and (3) defendant was gainfully employed and supporting his child and his wife's three children at the time of the offense.

¶ 48        First, the record does not contain any evidence of the State's initial plea offer. Defendant indicated at the *Krankel* hearing that the State had offered him a four-year plea deal, but his statement is not corroborated anywhere in the record. Thus, we will not rely on that basis as a ground for finding his sentence excessive. See *People v. Parsons*, 284 Ill. App. 3d 1049, 1064, 673 N.E.2d 347, 357 (1996) (sentencing court did not err by sentencing the defendant to 15 years after the State had proposed a plea deal of 6 to 10 years). The State may have tried to induce defendant to enter into an early plea agreement with the lure of a lesser sentence than typically warranted, but such an offer has no effect on an argument challenging a greater sentence. *Parsons*, 284 Ill. App. 3d at 1064 ("Moreover, there is nothing inherently unconstitutional in increasing a sentence after trial. Such an increase need not connote the imposition of a penalty because the defendant elected to proceed to trial, but, rather, the disparity may simply reflect an inducement given to a defendant to plea bargain in exchange for a sentence less than that which is ordinarily warranted. That, by itself, is not unlawful.").

¶ 49        Defendant also contends the circuit court failed to consider the factual circumstances of the offense and the fact defendant was providing for his family. When addressing an excessive sentence claim, this court has explained its role in reviewing a defendant's sentence as follows:

> "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341.

¶ 50        Defendant, based on his criminal record, was to be sentenced as a Class X offender. The State had recommended a sentence of 20 years, while defendant's attorney recommended a sentence of 6 years. The court considered defendant's "very poor prior record of prior criminal convictions, at least three residential burglaries, one as a juvenile, two as an adult, prior acts of violence and aggravated battery, felony domestic battery, misdemeanor domestic battery, at least three resisting a peace officer convictions, and then other convictions like escape and the cannabis conviction referred to by counsel." Additionally, the court considered defendant had committed this offense while on parole, an "extremely serious situation." The court found defendant was "a person who the public has to be protected from."

¶ 51        Defendant's sentence falls within the applicable statutory guidelines. Sentencing for a Class X offender is 6 to 30 years in prison. 730 ILCS 5/5-4.5-25(a) (West 2012). The circuit court's imposition of a sentence of 15 years falls squarely within the time prescribed. Given the relevant factors and considerations, we conclude the circuit court did not abuse its discretion in sentencing defendant.

¶ 52                                  III. CONCLUSION

¶ 53        For the reasons stated, we affirm the Macon County circuit court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 54        Affirmed.