# Illinois Official Reports

## Appellate Court

***People v. Taylor*, 2015 IL App (4th) 140060**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STATEN D. TAYLOR, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0060 |
| Filed<br>Rehearing denied | December 15, 2015<br>January 15, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 13-CF-418; the Hon. Timothy J. Steadman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Patricia Mysza and Aliza R. Kaliski (argued), both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Allison Paige Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Turner and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1    A jury found defendant, Staten D. Taylor, guilty of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2012)) for beating his brother-in-law. The trial court sentenced defendant to 15 years in prison. Defendant appeals, claiming (1) he was denied a fair trial on several grounds, (2) his trial attorney rendered ineffective assistance, (3) the court failed to give adequate consideration to his *pro se* allegations of ineffective assistance of counsel, and (4) his sentence was excessive. We affirm defendant's convictions, finding (1) he forfeited review of the errors he claimed had deprived him of a fair trial; (2) his ineffective assistance of counsel claims should be raised in postconviction proceedings where a better record can be made; (3) the court conducted an adequate *Krankel* inquiry (*People v. Krankel*, 102 Ill. 2d 181 (1984)) into his *pro se* posttrial allegations of ineffective assistance of counsel; and (4) his sentence was not excessive.

¶ 2                                I. BACKGROUND

¶ 3    Dawnette Sigmon, defendant's estranged wife, began living in a rented single-family home on Church Street in Decatur with her three young children in September 2012, a few months before she met defendant. Dawnette and defendant met in November 2012 and married in January 2013. Dawnette asked defendant to move out of the home in March 2013 after an undisclosed "incident." After this "incident," Dawnette and her children frequently stayed with a friend in Warrensburg. Whenever Dawnette wanted to return to her Church Street home, she would call on her brother, Jashua Sigmon, to check the home to ensure no one, meaning defendant, was there. On April 5, 2013, she reached out to Jashua and asked for a security check of the home.

¶ 4    Jashua testified at defendant's jury trial that on April 5, 2013, he received a call from his sister asking him to check on her house. At approximately 10 p.m., Jashua drove to the Church Street residence, where he saw defendant standing in the driveway talking to individuals in a van from the van's driver's side window. Jashua parked his vehicle behind the van and approached defendant, telling defendant he was not supposed to be there. Defendant told Jashua Dawnette had given him permission to stay there for the last few days. As Jashua approached, defendant shoved him and Jashua shoved defendant back. Defendant punched Jashua in the face. Jashua grabbed defendant in an attempt to take him to the ground. An unidentified man exited the van and grabbed Jashua from behind, holding his arms behind his back while defendant continuously punched Jashua in the face. The man threw Jashua to the ground, where defendant and the man repeatedly kicked Jashua in his back. Jashua crawled to his vehicle while being kicked. He estimated the two men kicked him between 15 and 25 times. Defendant eventually told the man to stop the beating, saying Jashua had enough to know not to " 'come around here anymore.' "

¶ 5    Jashua made it to his car and drove home, where he and his girlfriend cleaned the blood from his face. He said he did not want to call the police because he was on parole and he feared he would be sent back to prison. He went to the emergency room, where he was diagnosed with a broken nose. He was released after several hours, and had surgery to repair his nose several days later.

¶ 6    Dawnette also testified, corroborating Jashua's testimony regarding her request for the welfare check on her home. She denied giving defendant permission to be at her house. She

said his name was not on the lease, he did not contribute to the rental payments, and he did not have a key.

¶ 7　　Jason Danner, a Decatur police officer, testified he met with Jashua after the hospital had called the police to report the battery incident. Danner said both Jashua and Dawnette cooperated with his investigation. After speaking with the siblings, Danner drove to the Church Street residence, hoping to find defendant. He eventually saw defendant at the house and arrested him there. Danner noticed defendant had a cut on his finger and his fists were red and swollen.

¶ 8　　In defendant's case in chief, he presented, by stipulation, the testimony of Greg Bell, defendant's parole officer. If Bell were called to the witness stand, he would testify defendant was on parole on the date of the incident. He would also testify defendant's home record listed his address as the Church Street residence.

¶ 9　　After deliberations, the jury found defendant guilty of aggravated domestic battery. Defendant filed a *pro se* motion for ineffective assistance of counsel. The trial court conducted a *Krankel* hearing, wherein defendant complained his counsel did not (1) introduce evidence on his behalf at trial, (2) meet with him to discuss the trial, and (3) discuss the State's plea offer before trial. The court asked defendant to explain each allegation in detail. The court then asked defendant's counsel to respond. To the court's satisfaction, counsel explained the issues complained of were either (1) matters involving trial strategy or (2) nonmeritorious. The court denied defendant's motion.

¶ 10　　Counsel filed a posttrial motion, claiming the State's evidence was insufficient to support the jury's verdict. The court denied the motion and proceeded to sentencing. We note the day before the sentencing hearing, defendant filed a *pro se* motion "appealing" the trial court's denial of his claims of ineffective assistance of counsel.

¶ 11　　At sentencing, defendant testified on his own behalf in mitigation. He said at the time of the incident, he and Dawnette were married and living together. He was employed and contributing to the household expenses. They were expecting a child together. With regard to the incident, defendant explained he attempted to break up the fight between the unidentified male and Jashua. He said he spoke with Jashua after the incident and apologized. They maintain a personal relationship. Defendant admitted he has a problem with alcohol addiction.

¶ 12　　During sentencing recommendations from counsel, the State advised the court defendant was to be sentenced as a Class X offender because he had twice previously been convicted of residential burglary, a Class 1 felony, in 1995 and 2001. See 730 ILCS 5/5-4.5-95(b) (West 2012). After considering defendant's testimony, the presentence investigation report, counsels' recommendations, and the statutory factors in aggravation and mitigation, the trial court sentenced defendant to 15 years in prison.

¶ 13　　Defendant filed two *pro se* motions challenging his sentence as excessive. The trial court gave counsel the opportunity to file an amended motion on defendant's behalf. Counsel explained to the court defendant had filed a complaint with the Illinois Attorney Registration and Disciplinary Commission (ARDC) regarding his representation. The court asked defendant if he wished counsel to represent him in his motion to reduce his sentence. Defendant replied: "I'm fine with him." Counsel stood on defendant's *pro se* motions, providing no additional argument. The court denied defendant's motions.

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    Defendant raises several contentions of error, including allegations he was denied a fair trial, his counsel was ineffective, and his sentence was excessive. Specifically, with regard to his fair trial claims, he argues (1) the State elicited statements from his wife in violation of the marital privilege; (2) the jury was not given an instruction regarding the impeachment of Jashua's testimony based upon his prior convictions; and (3) the prosecutor in the State's closing argument improperly vouched for Jashua's and Dawnette's credibility, misstated Jashua's testimony, and improperly implied Dawnette feared a violent confrontation with defendant. Defendant also claims (1) the trial court failed to adequately inquire into his *pro se* allegations of ineffective assistance of counsel, (2) his 15-year sentence was excessive, and (3) his counsel rendered ineffective assistance of counsel throughout the trial. We address each contention in turn.

¶ 17                                  A. Marital Privilege

¶ 18    In Illinois, neither spouse may testify against the other as to any conversation, communication, or admission made between them or against the other in criminal cases, unless a spouse is charged with an offense against the other. 725 ILCS 5/115-16 (West 2012). The purpose of this privilege is "intended to further marital harmony, mutual understanding and trust by encouraging full disclosure, free communication, and confidential communications between spouses." *People v. Trzeciak*, 2013 IL 114491, ¶ 41. Our supreme court has narrowed the application of this privilege to only communications intended to be confidential. *Trzeciak*, 2013 IL 114491, ¶ 42. "There is a presumption that communications between spouses, privately made, are intended to be confidential. However, where it appears from the nature or circumstances under which the communication was made that confidentiality was not intended, the communication is not privileged." *Trzeciak*, 2013 IL 114491, ¶ 42.

¶ 19    Two elements must be met before a communication between spouses is deemed privileged. First, the statement must convey a message. Second, the message must be intended to be confidential. *Trzeciak*, 2013 IL 114491, ¶ 44.

¶ 20    The statements defendant is challenging in this appeal are from Dawnette's testimony at trial where she reiterated the voicemail messages defendant purportedly left on her telephone after the incident. Dawnette testified defendant left a voicemail message indicating he was sorry for fighting Jashua and asked if he could come home. Specifically, Dawnette testified defendant said he "was sorry for fighting [her] brother, that he shouldn't have been there, that it shouldn't have happened, and he wished it didn't happen like that."

¶ 21    Defendant claims his statements to Dawnette were "undoubtedly intended to be confidential," in that they were pleas to save their marriage. Defendant claims these statements were inadmissible.

¶ 22    Defendant forfeited review of this issue by failing to preserve it in the trial court proceedings. See *People v. Hall*, 194 Ill. 2d 305, 334-35 (2000) (failure to invoke the privilege during the wife's testimony forfeits the privilege). Because defendant did not object to the admission of this evidence at trial and did not argue this point in his posttrial motion, he has forfeited this issue for purposes of this appeal. See *People v. Enoch*, 122 Ill. 2d 176, 186

(1988). As such, the trial court was not afforded the opportunity to address whether the statements, as testified to by Dawnette, were protected under the marital privilege. The application of the privilege is based on the factual circumstances presented. See *Trzeciak*, 2013 IL 114491, ¶ 51 (whether a communication is privileged depends on the nature and form of the communication and the circumstances surrounding it; such a determination is a question of fact to be decided by the trial court). Defendant asks us to apply the plain-error doctrine, but we decline to do so, as explained below.

¶ 23     But first, as an alternative argument, defendant claims his attorney rendered ineffective assistance of counsel by failing to object to the introduction of these questionable statements during Dawnette's testimony. Rather than addressing this issue on direct appeal, we continue to follow the long line of authority this court has established for declining to address ineffective assistance of counsel claims on direct appeal where the record does not provide suitable explanations for counsel's conduct and/or his decisions. In *People v. Kunze*, 193 Ill. App. 3d 708, 726 (1990), this court held adjudication of a claim of ineffective assistance of counsel is often better made in proceedings on a petition for postconviction relief, where a complete record can be made.

¶ 24     A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111746, ¶ 23. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland*, 466 U.S. at 687). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20 (citing *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010).

¶ 25     Here, the State argues the message was neither clearly nor obviously intended to be confidential. Further, it is possible defendant's counsel reasonably believed the evidence would not damage defendant's case, given his tactic to concede to a lesser included offense of domestic battery. The answer to (1) why counsel did not object, or (2) whether defense counsel's decision not to object was one of trial strategy is currently outside of the record before us.

¶ 26     Accordingly, consistent with the line of authority beginning with *Kunze*, we likewise hold as follows: "Because the answers to the questions pertinent to defendant's claim are currently *de hors* the record, we decline to consider them. Instead, defendant may pursue his claim under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2002))." *People v. Durgan*, 346 Ill. App. 3d 1121, 1143 (2004).

¶ 27     We note defendant asks this court to review each of his fair trial claims initially under the plain-error rule because the issues were not properly preserved. The plain-error rule allows a reviewing court to review an unpreserved error in two circumstances: where (1) the evidence in the case is so closely balanced the jury's verdict may have resulted from the error and not the evidence; or (2) the error is so serious the defendant was denied a substantial right and, thus, a fair trial. *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009). The plain-error doctrine is a

disjunctive test; that is, courts will relax the forfeiture rule when *either* prong is satisfied. Applying the first prong, the defendant must demonstrate prejudice in an otherwise close case. Applying the second prong, prejudice is presumed if the defendant demonstrates an error occurred that was so serious it challenged the integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 187 (2005). Under either prong, the prejudicial effect of the error must be evident. However, only under the first prong must a defendant *demonstrate* prejudice. Therefore, if we were to review defendant's claims despite his forfeiture under the plain-error rule, we would begin by addressing whether defendant carried his burden of demonstrating prejudice under the first prong.

¶ 28    By addressing the issue of prejudice on direct appeal, this court would effectively foreclose any argument defendant could make in future postconviction proceedings on his anticipated ineffective assistance of counsel claims. This is so because the first prong of the plain-error doctrine and the second prong of an ineffective assistance of counsel claim involve substantially the same analysis, *i.e.*, whether the alleged error (in this instance, allowing the admission of the evidence) or counsel's performance (in this instance, failing to object to the admission of the evidence) tipped the scales of the trial toward defendant's guilt. The respective analyses are as follows: (1) the evidence is so closely balanced the alleged error alone would tip the scales of justice (plain error) (*Herron*, 215 Ill. 2d at 178); or (2) there was a reasonable probability that the result would be different but for counsel's error (see *Strickland*, 466 U.S. at 694).

¶ 29    Given the fact that a plain-error analysis and an ineffective assistance of counsel claim are similar, this court cannot effectively engage in a plain-error analysis on direct appeal while reserving an ineffective assistance of counsel claim for postconviction proceedings. See *People v. White*, 2011 IL 109689, ¶ 133 (analysis under plain-error review is similar to that for ineffective assistance). "Both analyses are evidence-dependent and result-oriented." *White*, 2011 IL 109689, ¶ 134. If this court engaged in a plain-error analysis, yet reserved the ineffective assistance of counsel claim, we could arguably secure a *res judicata* or collateral estoppel bar on the claims we encourage him to raise in a subsequent postconviction petition.

¶ 30    Therefore, because defendant raises the alternative argument of ineffective assistance of counsel in each of his fair trial claims, and we decline to address those claims here, we likewise decline to address whether the errors rise to the level of plain error.

¶ 31                    B. Failure To Give Jury Instruction on Prior Convictions

¶ 32    Defendant next claims he was denied a fair trial when the trial court failed to instruct the jury that Jashua's prior convictions of home invasion and armed robbery could be used to assess his credibility. Illinois Pattern Jury Instructions, Criminal, No. 3.12 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.12) states, "[e]vidence that a witness has been convicted of an offense may be considered by you only as it may affect the believability of the witness." In addition, the committee note to IPI Criminal 4th No. 3.12 states, "[t]his instruction should be given only when there has been impeachment of a witness by proof of a prior conviction." IPI Criminal 4th No. 3.12, Committee Note. Defendant claims this instruction should have been given because Jashua testified he had two prior felony convictions and his credibility was of primary importance because he was the only occurrence witness. He argues the jury should have been instructed that it could use those prior convictions to assess Jashua's credibility.

¶ 33 Again, defendant has forfeited review of this issue by failing to properly preserve it for appellate review. Defendant did not object during the trial court proceedings and, therefore, according to *Enoch*, he has forfeited review. See *Enoch*, 122 Ill. 2d at 186.

¶ 34 Generally, the trial court is under no obligation to give instructions not tendered. *People v. Barrow*, 133 Ill. 2d 226, 266 (1989). In *Barrow*, our supreme court found no reversible error for failing to give the jury Illinois Pattern Jury Instructions, Criminal, No. 3.12 (2d ed. 1981). *Barrow*, 133 Ill. 2d at 267. The court found defendant had forfeited the issue, but it also found no error despite the fact the prosecutor, the trial judge, and defense counsel had told the jury it should judge the credibility of the State's witness, a convicted felon, by the same standard as any other witness. However, counsel also reminded the jury the witness had been convicted and argued he should not be believed. *Barrow*, 133 Ill. 2d at 267.

¶ 35 The committee notes do not indicate IPI Criminal 4th No. 3.12 is a mandatory instruction. It would have been up to defendant to tender the instruction if he sought to undermine Jashua's credibility. He failed to do so.

¶ 36 Again, as an alternative argument, defendant claims his attorney rendered ineffective assistance of counsel by failing to tender IPI Criminal 4th No. 3.12. Like the marital-privilege issue, defense counsel may have had a reason for not tendering the instruction. Counsel could have reasonably decided to allow the jury to consider Jashua's convictions of home invasion and armed robbery to demonstrate his violent tendencies, suggesting he, not defendant, was the aggressor. For this reason, we find the issue of ineffective assistance of counsel is better left to postconviction challenges brought pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)), where a better and more complete record can be made. See *Kunze*, 193 Ill. App. 3d at 726. Because the answers to the questions pertinent to defendant's claim, such as why defense counsel did not tender the instruction, are currently *de hors* the record, we decline to consider them on direct appeal. Instead, defendant may raise the claims in a petition under the Act. See *Durgan*, 346 Ill. App. 3d at 1143.

¶ 37                                  C. State's Closing Argument

¶ 38 Defendant contends the prosecutor improperly vouched for the credibility of Jashua and Dawnette, which deprived him of a fair trial when the State's case centered solely on the witnesses' credibility. The prosecutor stated in his closing argument both witnesses were credible because they cooperated with the police. Defendant also claims the prosecutor improperly implied Dawnette feared a violent confrontation would occur if she went home and found defendant there. Defendant failed to pose any objection during the argument and likewise failed to raise the contentions of error in a posttrial motion. Therefore, defendant has forfeited this argument for appellate review as well. See *Enoch*, 122 Ill. 2d at 186.

¶ 39 Prosecutors are given wide latitude in closing arguments. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). If no objection was made when the prosecutor vouched for the credibility of the State's witnesses, it will constitute plain error only if the comments were so inflammatory as to deny the defendant a fair trial or so flagrant as to threaten deterioration of the judicial process. *People v. Boling*, 2014 IL App (4th) 120634, ¶ 126. Here, defendant challenges the prosecutor's comment to the jury that Jashua was cooperative with the police, "which is how you would expect the victim of a crime like this to act and corroborates his testimony." Defendant also challenges the prosecutor's comment that Dawnette was cooperative, "which corroborates her testimony and bolsters her credibility."

¶ 40     Defendant claims counsel's failure to object to the prosecutor's improper bolstering of the witnesses' credibility constitutes ineffective assistance of counsel. Again, we are unable to determine why counsel did not object. Was counsel's inaction based on a strategic decision? Counsel could have reasonably believed raising multiple objections during the prosecutor's closing argument would have unnecessarily risked offending the jury. The prosecutor's comments, seemingly vouching for the witnesses' credibility, may have seemed harmless to defense counsel in light of his purported trial strategy of conceding a lesser included offense. Again, we do not have enough information to make this determination on the record before us. See *People v. Brothers*, 2015 IL App (4th) 130644, ¶ 140 ("This court has held that '[c]laims of ineffective assistance of counsel are usually reserved for postconviction proceedings where a trial court can conduct an evidentiary hearing, hear defense counsel's reasons for any allegations of inadequate representation, and develop a complete record regarding the claim and where attorney-client privilege no longer applies.' [Citation.]" (quoting *People v. Weeks*, 393 Ill. App. 3d 1004, 1011 (2009))).

¶ 41                                    D. *Krankel* Inquiry

¶ 42     Defendant claims the trial court did not adequately inquire into his *pro se* allegations of ineffective assistance of counsel. In particular, defendant argues the trial court did not inquire into the ARDC complaint defendant had filed relating to counsel's representation. The law requires a trial court to conduct some type of inquiry into a defendant's *pro se* claim of ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). Thus, the concern is " 'whether the trial court conducted an adequate inquiry' into the allegations." *People v. Peacock*, 359 Ill. App. 3d 326, 339 (2005) (quoting *Moore*, 207 Ill. 2d at 78).

¶ 43     On August 25, 2013, approximately 10 days after defendant's jury trial, defendant filed a handwritten letter, stating he was not happy with counsel's representation. On August 29, 2013, defendant filed a handwritten "motion for ineffective counseling." The trial court, the Honorable Scott B. Diamond presiding, filed a letter in response addressed to defendant, indicating defendant's filings had "trigger[ed] a '*Krankel*' hearing." On October 10, 2013, the trial court, the Honorable Timothy J. Steadman presiding, conducted a *Krankel* hearing. At the hearing, the court asked defendant to explain his allegations "one at a time." After defendant mentioned each of his complaints, the court addressed defendant's counsel and asked him to respond. After considering defendant's and counsel's arguments, the court denied defendant's motion.

¶ 44     In January 2014, Judge Steadman conducted a hearing on counsel's motion to reconsider defendant's sentence. Prior to beginning the hearing, counsel informed the court that defendant had filed an ARDC complaint against him. The court asked defendant if he wanted "an attorney to represent [him] on this motion to reduce sentence." Defendant responded: "No, I'm fine with him."

¶ 45     In this case, the trial court satisfied the inquiry requirement set forth in *Moore*. The court gave defendant ample opportunity to explain each of his allegations. The court questioned defendant and trial counsel and, therefore, adequately inquired into and considered defendant's allegations stated in his filings with the court. *Cf. Peacock*, 359 Ill. App. 3d at 339-40.

¶ 46                                                E. Sentence

¶ 47        Defendant contends his 15-year sentence is excessive given (1) the State had previously offered him a 4-year plea agreement, (2) the circumstances of the case favored a lesser sentence, and (3) defendant was gainfully employed and supporting his child and his wife's three children at the time of the offense.

¶ 48        First, the record does not contain any evidence of the State's initial plea offer. Defendant indicated at the *Krankel* hearing the State had offered him a four-year plea deal, but his statement is not corroborated anywhere in the record. Thus, we will not rely on that basis as a ground for finding his sentence excessive. See *People v. Parsons*, 284 Ill. App. 3d 1049, 1064 (1996) (sentencing court did not err by sentencing the defendant to 15 years after the State had proposed a plea deal of 6 to 10 years). The State may have tried to induce defendant to enter into an early plea agreement with the lure of a lesser sentence than typically warranted, but such an offer has no effect on an argument challenging a greater sentence. *Parsons*, 284 Ill. App. 3d at 1064 ("Moreover, there is nothing inherently unconstitutional in increasing a sentence after trial. Such an increase need not connote the imposition of a penalty because the defendant elected to proceed to trial, but, rather, the disparity may simply reflect an inducement given to a defendant to plea bargain in exchange for a sentence less than that which is ordinarily warranted. That, by itself, is not unlawful.").

¶ 49        Defendant also contends the trial court failed to consider the factual circumstances of the offense and the fact defendant was providing for his family. When addressing an excessive-sentence claim, this court has explained its role in reviewing a defendant's sentence as follows:

>           "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36.

¶ 50        Defendant, based on his criminal record, was to be sentenced as a Class X offender. The State had recommended a sentence of 20 years, while defendant's attorney recommended a sentence of 6 years. The court considered defendant's "very poor prior record of prior criminal convictions, at least three residential burglaries, one as a juvenile, two as an adult, prior acts of violence and aggravated battery, felony domestic battery, misdemeanor domestic battery, at least three resisting a peace officer convictions, and then other convictions like escape and the cannabis conviction referred to by counsel." Additionally, the court considered defendant had committed this offense while on parole, an "extremely serious situation." The court found defendant was "a person who the public has to be protected from."

¶ 51        Defendant's sentence falls within the applicable statutory guidelines. Sentencing for a Class X offender is 6 to 30 years in prison. 730 ILCS 5/5-4.5-25(a) (West 2012). The trial court's imposition of a sentence of 15 years falls squarely within the time prescribed. Given the relevant factors and considerations, we conclude the trial court did not abuse its discretion in sentencing defendant.

¶ 52                        III. CONCLUSION

¶ 53        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 54        Affirmed.