2020 IL App (1st) 173104-U
No. 1-17-3104
Order filed December 28, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 1277 |
| | ) | |
| MARKUS MONROE, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justice Pierce concurred in the judgment.
Presiding Justice Walker specially concurred.

**ORDER**

¶ 1    *Held*:  We affirmed Monroe's conviction of armed habitual criminal and his 90-month sentence in the Illinois Department of Corrections. The evidence was not closely balanced and so we hold Monroe to his forfeiture of his claims of improper instructions under Illinois Supreme Court Rule 431(b) and of prosecutorial misconduct in closing arguments. Further, the trial court did not improperly rely on his previous convictions as factors in aggravation at sentencing.

¶ 2    A jury found Markus Monroe guilty of armed habitual criminal based on his possession of

a firearm after having previously been convicted of both burglary and residential burglary. Monroe

appeals asking for a new trial either because (i) the trial court improperly admonished the venire

during *voir dire* regarding the principles in Illinois Supreme Court Rule 431(b), or (ii) the prosecutor improperly employed an "us-versus-them" strategy during closing and rebuttal argument. We find both claims forfeited, and find no basis to excuse the forfeiture.

¶ 3 In addition, Monroe argues that the trial court based his 90-month sentence on an improper double enhancement. He claims the trial court relied on his burglary and residential burglary convictions in aggravation after those same convictions were used as predicate offenses to prove him guilty of armed habitual criminal. Though Monroe forfeited this claim as well, we can reach the merits because, were there to be error it would be second-prong plain error. But on the record before us, we cannot say the trial court accounted for the burglary and residential burglary convictions twice. We find no double enhancement and affirm Monroe's sentence.

¶ 4                                       Background

¶ 5 The State charged Markus Monroe with multiple offenses related to his possession of a firearm. Relevant here, the State charged Monroe with one count of armed habitual criminal for possessing a gun after having been convicted of two qualifying offenses: burglary and residential burglary. Monroe elected to be tried by jury.

¶ 6 Before jury selection began, the trial court admonished the venire as required by Illinois Supreme Court Rule 431(b):

> "Is there anybody who does not understand the proposition I just related to you that a criminal trial begins with the accused presumed to be innocent. Or if you have a problem or you disagree with it, or if you don't understand what I'm talking about, or you disagree with the principle please raise your hand. No hands are raised.

***

Is there anyone here who does not understand what I'm talking about when I say the charge is a way of putting the accused on notice of what they're accused of so they can prepare for the case. If you don't understand that or have a disagreement or a problem with that, please raise your hand. No hands are raised

\*\*\*

Is there anybody here who does not understand that concept, that the only way you can be guilty is if the government can prove guilt beyond a reasonable doubt does anybody have a problem or disagree with that, please raise your hand. No hands are raised

\*\*\*

If you don't understand that [the defendant does not have to prove his innocence] or if you have a problem or disagree with that please raise your hand. No hands are raised."

After the court finished its admonishments and the rest of *voir dire*, the State presented its evidence.

¶ 7    Chicago police officers William Elliot and Robert Curran were on patrol shortly before midnight on December 31, 2016. They were travelling south on Morgan Street from 59th Street when they saw Markus Monroe and a woman having a conversation as they left a gas station parking lot walking west. As the officers drove toward them, the woman signaled for the officers to stop and began "speaking gibberish and kind of yelling." The officers noticed Monroe continued walking west on the sidewalk of 59th Street. They followed and drove alongside him, slowing down to his pace of walking. Monroe made eye contact with the officers, turned, and ran while grabbing the right side of his waist. Curran immediately followed Monroe on foot.

¶ 8    Monroe went into an alley lit by streetlights. While trailing about 10 to 15 feet behind Monroe, Curran saw Monroe's right hand go up from his waistband and he saw a "dark object, silver-colored object" come out. Monroe threw the object on top of a garage, before taking a few more steps and lying down. Curran arrested Monroe "right away."

¶ 9    Using his flashlight, Curran saw a gun on top of the garage roof, and asked Elliot to retrieve it. Elliot found nothing else on the roof or in the area below.

¶ 10    The officers failed to turn on their body cameras. Nor did they activate their squad car video cameras showing the windshield view and the backseat, activated by turning on the emergency lights or by pressing a microphone. Elliot testified he did not want to blind Curran during the foot chase so kept the video cameras off. The officers also had microphones to record remotely; Curran's microphone remained off during the chase.

¶ 11    At trial, both officers identified a gun in court as the gun recovered from the roof, a Ruger P95 DC .9 millimeter semiautomatic pistol with 17 live rounds in an extended magazine. The parties stipulated to testimony that none of the fingerprints on the gun were suitable for identification, and that Monroe had been convicted of two qualifying felony offenses: burglary and residential burglary. The defense rested without presenting any evidence.

¶ 12    The State began its closing argument by reminding the jury that most people celebrate New Year's Eve at "dinner, a movie, spending time with loved ones, not [Monroe]." The State argued that Monroe instead "decided to arm himself with a loaded firearm and walk the streets of Chicago" because he was "a convicted felon [who] wanted to welcome the new year a completely different way." The State repeated these themes in its rebuttal argument: "Most people 15 minutes before midnight on New Year's Eve they are at a party, they are looking at their clock, looking for someone to kiss. What's [Monroe] doing. He is on 59th and Morgan looking over his shoulder.

And he is looking over his shoulder because he knows he is a felon and he knows he has this gun on him." Monroe's counsel made no objections to the State's argument.

¶ 13    The jury found Monroe guilty of armed habitual criminal. Monroe's counsel filed a motion for a new trial which did not mention the trial court's admonishments to the venire or the State's closing arguments. The trial court denied the motion.

¶ 14    At sentencing, as evidence in aggravation, the State only mentioned Monroe's previous convictions for burglary and residential burglary. The State did not refer to Monroe's previous misdemeanor convictions. After Monroe's counsel made arguments in mitigation, the trial court found the facts of the offense "were plain and supported." The court also said, "the presentence investigation report indicates his past criminality. He's been to the penitentiary before. The sentence will be 90 months in the penitentiary." Of Monroe's past convictions, his felony convictions had received prison sentences. The trial court denied Monroe's motion to reconsider his sentence.

¶ 15                                    Analysis

¶ 16    Monroe raises three arguments challenging is conviction and sentence. He argues for a new trial either because (i) the trial court improperly admonished the venire under Illinois Supreme Court Rule 431(b), or (ii) the prosecutor employed an improper "us versus them" strategy during closing and rebuttal arguments. He acknowledges both issues as forfeited, but asks for their review under the plain error doctrine. Alternatively, as to the claim of improper closing argument, he asks us to find trial counsel ineffective for failing to object and preserve the issue for our review. Turning to his sentence, Monroe argues the trial court improperly applied a double enhancement by considering the predicate offenses for his armed habitual criminal conviction as aggravating evidence.

¶ 17    Finding the evidence was not closely balanced, we reject Monroe's arguments for a new trial. We also find the record does not support a conclusion that the trial court relied on Monroe's previous convictions for burglary and residential burglary in aggravation at sentencing.

¶ 18                                  New Trial Claims

¶ 19    Monroe acknowledges he forfeited both claims entitling him to a new trial—the trial court's purported failure to correctly admonish the jurors under Illinois Supreme Court Rule 431(b) and the prosecutors "us versus them" argument. To preserve a claim for our review, a defendant must both object at the time the alleged error occurred and reassert the claim of error in a posttrial motion. *E.g. People v. Cavette*, 2018 IL App (4th) 150910, ¶ 29. We can review forfeited claims in limited circumstances, either where the evidence is so closely balanced the error alone threatens to "tip the scales of justice," or where the error is so serious it affects the fairness of the trial and integrity of the judicial process. *Id.*; see also Ill. S. Ct. Rule 615(a).

¶ 20    Ordinarily, "as a matter of convention," the first step involves determining whether a clear or obvious error occurred; but "[w]hen it is clear that the alleged error would not have affected the outcome of the case, a court of review need not engage in the meaningless endeavor of determining whether error occurred." *People v. White*, 2011 IL 109689, ¶¶ 144, 148. We take that approach because both of Monroe's claims fail plain error review, and, correspondingly, do not rise to the level of ineffective assistance of counsel. *Id.*, ¶ 133 (plain error review under closely-balanced-evidence prong is similar to analysis of prejudice prong of ineffective assistance of counsel claims).

¶ 21    Monroe claims the evidence against him is closely balanced, so we evaluate all the evidence in the record on a "qualitative, commonsense" basis. *People v. Sebby*, 2017 IL 119445, ¶ 53. We assess the evidence relative to the crime charged along with evidence impacting the

witnesses' credibility. *Id.* We then determine whether the alleged error, assuming there was one, occurred in a case "where its impact on the result was potentially dispositive." *Id.*, ¶ 68.

¶ 22    We do not find the evidence closely balanced. Both officer Curran and detective Elliot testified consistently about the interaction that led to Monroe's arrest. As Curran chased Monroe, he saw Monroe throw an object on a garage roof. Curran made his observations from only 10 to 15 feet away in artificial lighting from street lights. When Elliot arrived in the alley, he found a gun on the roof of the same garage. After searching the roof and the area around the garage, the officers found no other objects. Curran identified the gun in court as the one Elliot recovered.

¶ 23    The only potential weakness we see in the officer's testimony involved the failure to activate the dashboard camera in the squad car as Elliot drove to meet Curran in the alley. Elliot explained, however, that even if the camera had been activated, its fixed angle would not have been facing the appropriate direction to capture the incident.

¶ 24    Monroe relied on cases that are quite unlike this one. For example, in *People v. Jackson*, 2012 IL App (1st) 102035, the evidence of the defendant's knowledge of a gun in his car was circumstantial, in the form of an officer's testimony that after pulling the defendant over he tried to restart his car and flee. *Id.*, ¶ 19. The defendant consistently denied knowing a gun was in his car and denied that he attempted to restart his car after he being pulled over. *Id.* While not the only type of closely balanced case, *Jackson* falls within *Sebby*'s quintessential example of a "contest of credibility." *Sebby*, 2017 IL 119445, ¶ 63. Here, no substantial cross-examination, let alone another version of events, contests the officers' credibility.

¶ 25    *Cavette* suffers the same fate. There, officers arrested the defendant and found marijuana and a gun in rooms the defendant was not in. *Cavette*, 2018 IL App (4th) 150910, ¶¶ 7-8, 33. A witness testified that from 30 feet away she saw the defendant holding a gun. *Id.*, ¶ 6. No forensic

testimony linked the defendant to the gun or marijuana, and the jury deadlocked on both charges. *Id.*, ¶ 33. To convict the defendant of the marijuana charge, the jury had to disbelieve the apartment renter's testimony that the marijuana did not belong to him. The evidence here differs significantly. The officers both saw Monroe throw an object in the exact location they found the gun and where no other objects were found. The jury did not have to make the same inferential leap as the jury in *Cavette*, where the only witnesses who saw the defendant with the gun or marijuana made those observations in locations other than where the gun and marijuana were ultimately found.

¶ 26    We emphasize our agreement with Monroe that a defendant need not present a defense or otherwise testify to his or her own version of events for the evidence to be closely balanced. *People v. Othman*, 2020 IL App (1st) 150823-B, ¶ 70. But to be closely balanced, the evidence must "come[ ] from unreliable witnesses," from witnesses who offer conflicting accounts, or from prosecution witnesses who provide evidence favorable to the defendant. *Id.* Our review of this record shows nothing inherently unreliable about the officers' testimony, which was consistent between the two of them. Similarly, no evidence from the State's witnesses tends to favor Monroe. Our "commonsense" view of the record leads to one conclusion: the evidence was not closely balanced and we cannot excuse Monroe's forfeiture under the first prong of the plain error doctrine.

¶ 27    As to the claimed errors in the prosecutor's closing arguments, Monroe also invokes second-prong plain error—an error so serious that it effects the integrity of the judicial process, regardless of the closeness of the evidence. *Cavette*, 2018 IL App (4th) 150910, ¶ 29. Though our supreme court has found instances where prosecutorial misconduct warrants review under the second prong, it has limited second-prong review to situations involving "a pattern of intentional prosecutorial misconduct." *People v. Johnson*, 208 Ill. 2d 53, 64 (2003).

¶ 28    The claim of prosecutorial misconduct here hardly compares to what occurred in *Johnson*, and second-prong plain error does not apply to excuse Monroe's forfeiture. In *Johnson*, for example, the prosecutor made a veritable host of improper arguments: (i) urging the jury to send a message of support for the police, (ii) telling the jury an acquittal sent a message to "go ahead and get those sawed off shotguns *** plan your murders ** and go ahead and blast away," (iii) aligning himself with the jury arguing "we as a people can stand together" against "them," (iv) using metaphors to refer to the defendant as an animal, (v) misstating evidence, (vi) mischaracterizing applicable law, (vii) implying the defendant's counsel was attempting to lie to the jury, (viii) inflaming the jury's passions by noting that the murder took place close to a school, and (ix) invoking the victim's family to gain the jury's sympathy. *Id.* at 75-83. The arguments here fall far short of the pervasive pattern of blatant misconduct in *Johnson*.

¶ 29    Finally, Monroe argues trial counsel was ineffective for failing to object to the "us versus them" portions of the prosecutor's argument. Ineffective assistance claims are governed by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring a defendant show (i) counsel performed deficiently and (ii) defendant suffered prejudice from counsel's deficiency. *E.g. People v. Taylor*, 2018 IL App (4th) 140060-B, ¶ 25. Both *Strickland* prongs must be satisfied to succeed on a claim of ineffective assistance of counsel. *See id.* As we explained, our supreme court has equated *Strickland*'s prejudice prong with the first prong plain error. *White*, 2011 IL 109689, ¶ 133. Having found the evidence was not closely balanced, Monroe's ineffective assistance claim necessarily fails for lack of prejudice.

¶ 30    Neither plain error nor ineffective assistance of counsel saves Monroe's Rule 431(b) or prosecutorial misconduct claims from his forfeiture. Because Monroe's claims are forfeited, we have no occasion to rule on their merits. Before turning to his sentence, however, we admonish

the State that any argument attempting to pit the jury against the defendant in a personal way is patently inappropriate, whether or not the argument amounts to reversible error. With that caution, we affirm Monroe's conviction.

¶ 31                                                    Sentencing

¶ 32    Monroe also challenges his 90-month (7 ½-year) sentence. He argues the trial court applied an improper double enhancement by considering his burglary and residential burglary convictions twice—once to increase the severity of the offense and once to increase the severity of his sentence. Monroe acknowledges that we have recently rejected this argument in *People v. Brown*, 2018 IL App (1st) 160924, but he asks us to find *Brown* was wrongly decided.  We need not pass judgment on *Brown* as we find Monroe's claim fails as a matter of fact. The record simply does not support a conclusion that the trial court relied on Monroe's burglary convictions as factors in aggravation.

¶ 33    As an initial matter, the parties disagree on whether this issue is properly preserved. The briefing on this question leaves something to be desired. Monroe, in his opening brief, argued his claim of an improper double enhancement was preserved as a species of excessive sentence claim. The State, in its brief, argues the issue was forfeited, but makes no alternative argument about harmless error in the event we were to find the issue preserved. Monroe, in his reply brief, makes no effort to argue plain error applies to review his claim in the event we find it forfeited.

¶ 34    We agree that Monroe forfeited his argument on the double enhancement claim. See *People v. Fouts*, 319 Ill. App. 3d 550, 553 (2001) (sentencing claim of improper restitution forfeited where not specifically mentioned in post-sentencing motion). We also have held, however, that claims of improper double enhancements are reviewable as second-prong plain error. *People v. Mitok*, 2018 IL App (3d) 160743, ¶ 13. We will review the propriety of Monroe's sentence.

¶ 35    The parties do not dispute the basic legal principles. A criminal defendant experiences a "single enhancement" of the penalties for his or her crime when the legislature either enhances the offense (*e.g.* Class 2 to Class 4) or enhances the punishment (*e.g.* an extended term). *Thomas*, 171 Ill. 2d at 223. A criminal defendant experiences a "double enhancement" when the same factor used in the first enhancement is used again to either (i) enhance the offense, (ii) enhance the punishment, or (iii) enhance the offense and the punishment in some combination. *Id.* (collecting examples). Double enhancements are only proper where the General Assembly has intended double enhancements. See *id.* We review claims of improper double enhancements *de novo*. *Brown*, 2018 IL App (1st) 160924.

¶ 36    Factually, none of the evidence in *Brown* showed the trial court had considered one of the armed habitual criminal predicates—unlawful use of a weapon by a felon (UUWF)—in aggravation. *Id.* ¶ 22. The trial court described the defendant's criminal history as "drug related and non-violent" lending further ambiguity to whether the UUWF conviction had played a role in the sentencing decision. *Id.* At the end of the day, a defendant must still show the trial court relied on the predicates used to prove armed habitual criminal as aggravation. *People v. Bourke*, 96 Ill. 2d 327, 332 (1983) (resentencing not required where record shows trial court's reliance on improper factor was "so insignificant that it did not lead to a greater sentence.").

¶ 37    Likewise, we find the link too tenuous between Monroe's armed habitual criminal predicates and the trial court's 18-month departure from the statutory minimum sentence. In sentencing, the trial court referred broadly to Monroe's "past criminality" and noted he had "been to the penitentiary before." Monroe's past criminality included four misdemeanor offenses unrelated to his previous burglaries. Monroe makes much of the trial court's reference to the "penitentiary," pointing out that Monroe's burglary convictions were the only ones for which he

had received prison sentences served in the Illinois Department of Corrections. This argument elides, however, that two of Monroe's previous misdemeanor convictions came with some form of incarceration, namely in the Cook County Jail. We do not find the trial court's passing reference to "the penitentiary" to sufficiently set Monroe's burglary convictions apart as the basis for the trial court's departure from the minimum.

¶ 38    Based on the record, we cannot say the trial court relied on Monroe's armed habitual criminal predicates, let alone relied on them in any significant way, to depart from the statutory minimum sentence. We affirm Monroe's sentence.

¶ 39    Affirmed.

¶ 40    JUSTICE WALKER, specially concurring:

¶ 41    I concur in the result.  I write separately because I disagree with the majority's assessment of the strength of the evidence and to remind prosecutors of our Supreme Court's admonishment concerning misconduct.  I concur because I find the prosecutor's objectionable and inappropriate remarks too brief and isolated to earn the label "plain error."

¶ 42    The majority asserts "[t]he officers both saw Monroe throw an object in the exact location they found the gun," but Elliott never saw any object in Monroe's hand. In addition, Elliott did not see Monroe throw anything.  The trier of fact relied on only a single witness, Curran, to find that Monroe possessed the gun Elliott found.

¶ 43    A jury could find Curran's testimony not credible.  The majority notes that Curran did not turn on his body camera or microphone.  Just as running from police may suggest a consciousness of guilt, failing to turn on readily available recording equipment suggests a choice to suppress evidence.  Curran's choice ensured that the jury would have no visual evidence of how the gun came to the place Elliott found it.  The State's case left the jury to resolve the close issue of whether

to believe Curran despite his failure to use readily available equipment to record the interaction with Monroe.

¶ 44    The prosecutor at the outset of the case and in closing argument set the scene for the jurors by inviting them to remember how they spent New Year's Eve and contrasting that with the acts of Monroe.  The majority does not quote the prosecutor's most objectionable comment.  The prosecutor said Monroe "walk[ed] the streets" on New Year's Eve and "the full force of the Chicago Police Department was also working the streets. Patrolling the neighborhoods. Working hard to keep us safe."  The remark treated the jurors as part of "us" needing police to keep the jury safe from them being people like Monroe.  The remark engendered an "us-versus-them" mentality of the kind disapproved in *People v. Johnson*, 208 Ill. 2d 53, 64 (2003) and *People v. Wheeler*, 226 Ill. 2d 92, 122 (2007).

¶ 45    I also write to remind prosecutors that our Supreme Court has consistently reaffirmed its intolerance of prosecutorial misconduct. See *Wheeler*, 226 Ill. 2d 92, 122 (2007).  "A closing argument must serve a purpose beyond inflaming the emotions of the jury. *People v. Nicholas*, 218 Ill. 2d 104, 121, (2005); *Johnson*, 208 Ill. 2d at 87-88 ("Our system of justice requires that a defendant's guilt or innocence be determined based upon relevant evidence and legal principles, upon the application of reason and deliberation by a jury, not the expression of misdirected emotion or outrage by a mob").

¶ 46    If defense counsel had made a timely objection to the remarks, the trial court could have taken steps to cure the error.  See *People v. Vargas*, 174 Ill. 2d 355, 363-64 (1996).  The prosecutor here made isolated inappropriate and objectionable comments, and after the brief improper comments, the prosecutor directed the jurors' attention to the evidence and the applicable law.  Although I find part of the closing argument improper and objectionable, and the evidence closely

balanced, I do not find the remarks so pervasive or prejudicial as to rise to the level of plain error. See *People v. Deramus*, 2014 IL App (1st) 130995, ¶ 35. Accordingly, I concur with the decision to affirm the trial court's judgment.